Peter I. Ostroff, SBN 45718
postroff@sidley.com
Amy P. Lally, SBN 198555
alally@sidley.com
Ellen S. Robbins, SBN 298044
erobbins@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California  90013
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600

Attorneys for Defendant
Microsoft Corporation

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDMUND PIETZAK and ERIN HUDSON, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>vs.<br><br>MICROSOFT CORPORATION and HELLOWORLD, INC.,<br><br>          Defendants. | Case No. 2:15-cv-05527 -R-JEMx<br><br><u>CLASS ACTION</u><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT MICROSOFT CORPORATION'S MOTION TO DISMISS PLAINTIFFS EDMUND PIETZAK'S AND ERIN HUDSON'S COMPLAINT**<br><br>[Notice of Motion; Motion to Dismiss; Request for Judicial Notice; Declaration of Ellen S. Robbins; [Proposed] Order filed concurrently herewith]<br><br>Judge:     Hon. Manuel L. Real<br>Date:      November 16, 2015<br>Time:      10:00 a.m.<br>Location:  Courtroom 8 |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

FACTUAL BACKGROUND.................................................................2

ARGUMENT ..........................................................................................6

I.    Plaintiffs Do Not Meet the Standing Requirements of Article III, the
      TCPA, or the UCL.........................................................................6

      A.    Plaintiffs Lack Standing Regarding Any Microsoft Text
            Messaging Promotion to Which They Did Not Subscribe. .................8

      B.    Plaintiffs Lack Standing Regarding Any Microsoft Text Message
            They Did Not Receive...........................................................10

      C.    Plaintiffs Lack Standing as to Their UCL Claims Because They
            Did Not Suffer Any Lost Money or Property. ...................11

II.   Plaintiffs Do Not Meet the Factual Pleading Standard of Federal Rules
      of Civil Procedure 8, 9(b), and 12(b)(6).........................................12

III.  Plaintiffs Fail to State a Claim for Relief Under the TCPA.........................14

IV.   Plaintiffs Fail to State a Claim for Relief Under the UCL. ...........................16

V.    Plaintiffs' Class Claims Fail Because They Base Them on an Improper
      "Fail Safe" Class Definition. .........................................................18

CONCLUSION......................................................................................20

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................11, 13, 14

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................13, 14

*Blum v. Yaretsky*,
   457 U.S. 991 (1982)...............................................................................9, 10

*Brazil v. Dell Inc.*,
   585 F. Supp. 2d 1158 (N.D. Cal. 2008)....................................................19

*Buckland v. Threshold Enters., Ltd.*,
   155 Cal. App. 4th 798 (2007), *disapproved on other grounds in*
   *Kwikset v. Superior Court*, 51 Cal. 4th 310 (2011)..............................8, 12

*Cel-Tech Commc'ns, Inc. v. L.A. Tel. Co.*,
   20 Cal. 4th 163 (1999)............................................................................16

*Clapper v. Amnesty Int'l USA*,
   133 S.Ct. 1138 (2013).............................................................................12

*Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010).................................................................10

*Dodd–Owens v. Kyphon, Inc.*,
   Case No. C-06-3988 JF (HRL), 2007 WL 420191 (N.D. Cal. Feb. 5,
   2007)......................................................................................................18

*Fisher v. Monster Beverage Corp.*,
   --- F. Supp. 2d ---, 2013 WL 10945131 (C.D. Cal. Nov. 12, 2013)...................9, 11

*Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*,
   528 U.S. 167 (2000)................................................................................7, 12

*Genenbacher v. CenturyTel Fiber Co. II, LLC*,
   244 F.R.D. 485 (C.D. Ill. 2007)..............................................................18

ii

*Harrington v. Choicepoint Inc.*,
    Case No. CV 05–01294 MRP, 2006 WL 8198396 (C.D. Cal Oct. 11,
    2006) ............................................................................................................7

*Heffelfinger v. Elec. Data Sys. Corp.*,
    Case No. CV 07-00101 MMM (Ex), 2008 WL 8128621 (C.D. Cal.
    Jan. 7, 2008) ............................................................................................18

*Johns v. Bayer Corp.*,
    Case No. 09CV1935 DMS (JMA), 2010 WL 476688 (S.D. Cal. Feb.
    9, 2010) ..........................................................................................8, 10, 11

*Kamar v. RadioShack Corp.*,
    375 Fed. App'x 734 (9th Cir. 2010) ........................................................18

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .................................................................13

*Kokkonen v. Guardian Life Ins. Co.*,
    511 U.S. 375 (1994)...................................................................................6

*LaCourt v. Specific Media, Inc.*,
    Case No. SACV 10–1256–GW, 2011 WL 1661532 (C.D. Cal. Apr.
    28, 2011) ..............................................................................................6, 7

*McKinley v. Southwest Airlines*,
    Case No. CV 15–02939–AB, 2015 WL 2431644 (C.D. Cal. May 19,
    2015) ....................................................................................................6, 7

*Mlejnecky v. Olympus Imaging Am., Inc.*,
    No. 2:10-CV-02630-JAM-KJN, 2011 WL 1497096 (E.D. Cal. Apr.
    19, 2011) .....................................................................................................6

*Nat'l Family Planning & Reproductive Health v. Gonzales*,
    468 F.3d 826 (D.C. Cir. 2006)................................................................12

*Nelsen v. King Cnty.*,
    895 F. 2d 1248 (9th Cir. 1990) .................................................................7

*Perkins et al. v. LinkedIn Corp.*,
    Case No. 5:13-cv-04303 ...........................................................................5

*Randleman v. Fidelity Nat'l Title Ins. Co.*,
    646 F.3d 347 (6th Cir. 2011) ..................................................................18

iii

*Said v. Encore Sr. Living LLC*,
    Case No. EDCV 11–01033 VAP, 2012 WL 602210 (C.D. Cal. Feb.
    24, 2012) ................................................................................................. 10

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ................................................................. 13

*Stokes v. CitiMortgage, Inc.*,
    Case No. CV 14–00278 BRO, 2014 WL 4359193 (C.D. Cal. Sept. 3,
    2014) ....................................................................................................... 10

*White v. Lee*,
    227 F.3d 1214 (9th Cir. 2000) ................................................................. 6

**Statutes**

Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227 ........................*passim*

Unfair Competition Law ("UCL") ................................................................. 1, 8, 11, 16

**Other Authorities**

Fed. R. Civ. P. 8, 9(b) .......................................................................................... 1

Fed. R. Civ. P. 8, 9(b), and 12(b)(6) ........................................................... 12, 13, 14

Fed. R. Civ. P. 9(b) ................................................................................... 3, 4, 13, 14

Fed. R. Civ. P. 12(b)(1) ............................................................................... 2, 6, 10

Fed. R. Civ. P. 12(f) .......................................................................................... 11

Federal Rule of Civil Procedure 23 ........................................................................ 9

United States Constitution, Article III ................................................................*passim*

DEFENDANT MICROSOFT CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## <u>INTRODUCTION</u>

Plaintiffs Edmund Pietzak ("Pietzak") and Erin Eggers Hudson ("Hudson," and collectively with Pietzak, "Plaintiffs") filed this case under the Telephone Consumer Protection Act ("TCPA") based on a small number of text messages they ***<u>asked</u>*** to receive from Microsoft Corporation ("Microsoft"). Plaintiffs' Complaint must be dismissed for lack standing.

Plaintiffs lack standing under Article III, the TCPA and the Unfair Competition Law ("UCL") because: (1) they were not harmed by Microsoft text messaging promotions to which they did not subscribe or text messages that they did not receive; (2) their alleged embarrassment, emotional harm, and lost profits cannot be recovered under the TCPA or UCL; (3) there is no cognizable injury under the TCPA for individuals, like Plaintiffs , who received only text messages they asked to receive; and (4) Plaintiffs appear to have subscribed to Microsoft text messaging promotions for the purpose of bringing this lawsuit. Because Plaintiffs lack standing to bring these claims as individuals, they may not bring them on behalf of a class.[1]

The Complaint should also be dismissed for the following additional dispositive reasons. First, the Complaint does not meet the pleading requirements of Federal Rules of Civil Procedure 8, 9(b), or 12(b)(6) because it does not identify the unsolicited text messages Plaintiffs actually received, the mobile telephone numbers at which Plaintiffs received them, or the allegedly deceptive statements on which Plaintiffs relied. Plaintiffs' vague and conclusory allegations conflate their actual experience with the Microsoft text messaging program with the experience of unnamed class members to circumvent the individual issues that will necessarily

---

[1] Although Microsoft's Motion primarily addresses the individual claims of the named Plaintiffs, the claims of numerous unnamed, absent members of the proposed class may be subject to arbitration clauses. By moving to dismiss the individual claims of Pietzak and Hudson, Microsoft in no way waives, and expressly reserves, its right to compel arbitration as to the unnamed, absent members of the proposed class and expressly reserves its right to compel the named Plaintiffs to arbitration should it later be determined that they are subject to an applicable arbitration clause.

predominate in this case.  Second, even assuming the truth of Plaintiffs' allegations, their claims fail because Microsoft's text messaging program complies with the TCPA.  Plaintiffs voluntarily sought specific information about Microsoft promotions, providing both their phone numbers and their express written consent to receive that information by texting specific keywords to a short code from their mobile phones.  They received exactly what they requested in return.  Plaintiffs have not pled any facts demonstrating that Microsoft's text messaging programs are unlawful, unfair, or fraudulent.

Third, even if the individual Plaintiffs had standing (which they do not), met their basic pleading requirements (which they do not), and could state a claim upon which relief could be granted (which they cannot), Plaintiffs' class claims fail because they are based on an improper, "fail safe" class definition that conditions class membership on Defendants' liability.  The Ninth Circuit and district courts both in and outside of California routinely reject "fail safe" classes because they are unfair, unmanageable, and lead to a lack of finality in litigation.  Accordingly, Plaintiffs' class claims fail along with their individual claims.

As a result, Microsoft brings this Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), based on Plaintiffs' lack of standing, and 12(b)(6), based on Plaintiffs' failure to state a claim, and requests that the Court dismiss Plaintiffs' Complaint in its entirety.

## FACTUAL BACKGROUND

Microsoft  licenses and sells various software and hardware, including Xbox video game systems.  Complaint ¶ 36.  Millions of people are dedicated fans of its products and services, and have taken steps to keep themselves apprised of the latest Microsoft offers.  *See id.* ¶ 67 (5.57 million people follow Microsoft's Xbox video game system on Twitter, 6.64 million people follow Microsoft on Twitter, and 806,000 people follow the Microsoft Store on Twitter); *id.* ¶ 70 (1.3 million people "like" the Microsoft Store Facebook page).  According to the Complaint, today's

2

customers prefer companies that send them direct notification of deals and offers.  *See id.* ¶ 106 ("Customers who get direct notifications of a deal are far more likely to patronize your business overall.").  Some Microsoft customers stay informed of its latest news and offers by signing-up to receive Microsoft's "tweets" and "posts" (*see id.* ¶¶ 67, 70), while others sign-up to receive text messages with information about new Microsoft software and hardware, upcoming Microsoft events, and discounts (*id.* ¶ 51 and *fig.* 5).

Plaintiffs allege that the text messages sent to some, but not all, of the people ***who asked to receive*** promotional texts from Microsoft violated the TCPA.   *See id.* (admitting that text messages sent to people who signed up on a website to receive promotional texts were not "unlawful").  The same promotional text messages were sent both to people who signed up on a Microsoft website to receive promotional texts and people who signed up to receive promotions by initiating a text message to Microsoft, as was done by the named Plaintiffs here.

Plaintiffs' individualized circumstances are as follows.  On June 17, 2015 (during business hours),[2] approximately one month before she filed the Complaint, Hudson texted the word "HALO" to the short code 29502 to sign-up to receive "a chance to win a limited edition Xbox One console."   *See id.* ¶ 71 and *fig.* 10; *see also* Nahrup Decl.  ¶ 6.[3]  She promptly received two texts in return: (a) a text message indicating that she had successfully signed up to receive alerts and deals, and could text "STOP" to cancel, and (b) a text message confirming that she was entered to win an Xbox One console.  *See id.*  One minute later (after receiving the foregoing texts

---

[2] Hudson includes allegations sounding in fraud, but she fails to allege the date, time or phone number used when she signed up to receive text messages from Microsoft.  *But see* Declaration of Steve Nahrup in Support of HelloWorld, Inc.'s Motion to Dismiss Plaintiffs' Complaint or, in the Alternative, to Stay the Matter (ECF Doc. No. 16-2) ("Nahrup Decl.") ¶ 8;  Declaration of Ellen S. Robbins ("Robbins Decl.") ¶ 1, Ex. 1 (filed concurrently herewith).  This is one of the many reasons the Complaint is deficiently pled and should be dismissed.  *See* Fed. R. Civ. P. 9(b) (requiring that fraud allegations be plead with particularity).

[3] For strategic reasons explained herein, Hudson omits from the Complaint her choice to text "HALO" to sign-up for a Microsoft promotion.  *C.f.* Complaint ¶ 30.

and still during business hours), Hudson texted the word "SURPRISE" to "find out how to win great prizes." *See* Complaint ¶¶ 30, 75 and *fig.* 13; *see also* Nahrup Decl. ¶ 7.  She promptly received a return text containing a link to a web-based coupon.  *See* Nahrup Decl. ¶ 8.  The next day, June 18, 2015, she received a text that directly relayed the discount.  *See id.*  She received no other text messages.  *See id.*

On April 29, 2015 (during business hours),[4] Pietzak texted "GAMER" to receive text messages about "game launches, @Xbox events, & special offers."[5]  *See* Complaint ¶¶ 25, 68 and *fig.* 8; *see also* Nahrup Decl. ¶ 3.  Pietzak promptly received two texts in return: (a) a text message indicating that he had successfully signed up to receive alerts and deals, and could text "STOP" to cancel, and (b) a text offering a 5% discount on a future purchase.  *See* Nahrup Decl. ¶ 4.  Shortly thereafter, on May 20, 2015, Pietzak received two texts announcing new game launches.  *See id.*  He received no other text messages.  *See id.*

Plaintiffs purport to bring a putative class action Complaint against Microsoft and HelloWorld, Inc. ("HelloWorld", and collectively with Microsoft, "Defendants"), the vendor that implements Microsoft's text messaging campaigns (*id.* at ¶ 37), because they allegedly received unwanted text messages from Defendants without providing their prior, express written consent (*id.* ¶¶ 1, 25, 29).  Plaintiffs own allegations summarized above belie this assertion.  Not only did Plaintiffs voluntarily request from Defendants information regarding Microsoft promotions and products,

---

[4] Similar to his co-plaintiff, Pietzak also failed to allege the date, time or phone number used when he signed-up to receive promotional text messages from Microsoft, even though his allegations also sound in fraud.  *But see* Nahrup Decl. ¶¶ 3-4; Robbins Decl. ¶ 1, Ex. 1.  Pietzak's fraud allegations fail right with Hudson's for deficient and incomplete factual pleading.  *See* Fed. R. Civ. P. 9(b) (requiring that fraud allegations be plead with particularity).

[5] The Complaint fails to allege that either named Plaintiff or any class member was involved in making a purchase of goods or services at the time the class member initiated a text to Microsoft to receive a promotion.  To the contrary, the Complaint alleges that the class members were engaged in social media when they initiated their texts to Microsoft.  Having not alleged the pendency of any purchases, there is no basis for Pietzak's allegation that he believed "he had to send a text message as a condition to purchase."  Complaint ¶¶ 25-26.  Hudson does not make this allegation.

but Plaintiffs also received the exact information they requested.  Plaintiffs now claim that they never wanted such information, and that Defendants deceived them into providing their mobile phone numbers in order to subject them to "a barrage of unsolicited 'text' message advertisements,"[6] (*id.* ¶¶ 1-2) in violation of the TCPA and the UCL.

Even on the face of the Complaint, it appears Plaintiffs subscribed to Microsoft text messaging promotions for the purpose of pursuing this litigation.  At the time this lawsuit was filed, Hudson was already serving as a named plaintiff (under her maiden name of Eggers) for the same law firm, Olavi Dunne LLP, that represents her here, in a class action lawsuit filed against LinkedIn, captioned *Perkins et al. v. LinkedIn Corp.*, Case No. 5:13-cv-04303, in the United States District Court for the Northern District of California.[7]  Plaintiffs' Complaint, filed shortly after they chose to sign up to receive specific text messages from Microsoft via HelloWorld, describes in detail numerous public disclosures made by Microsoft and HelloWorld about their promotional text messaging.  *E.g.*, Complaint ¶ 45 (excerpting from a 2011 Microsoft White Paper ); *id.* ¶ 52 and *fig.* 6 (HelloWorld terms and conditions accessed by Plaintiffs (and/or Plaintiffs' counsel)).  These public disclosures were made well before this case was filed, and explain procedures generally used for text messages like those from Microsoft: "Messages sent from automated system.  Consent not required for purchase.  You may unsubscribe from a program at any time . . . .".  *Id.* ¶¶ 45, 52 and *fig.* 6.  Plaintiffs do not allege whether they read those public disclosures before or after initiating their text messages to Microsoft, suggesting that they may

---

[6] Notably, Plaintiffs did not attach to the Complaint nor quote in the text of the Complaint each of the purported "barrage" of text messages they received in response to their requests, even though their claims sound in fraud.  Plaintiffs' allegations arguably incorporate those texts by reference into the Complaint and the Court may consider the same in ruling on Microsoft's Motion to Dismiss.  *See infra* Section I.B. As set forth in the Nahrup Declaration, Plaintiffs collectively received just 8 text messages over a four month period.

[7] See Request for Judicial Notice ("RJN"), Ex. A.

1    have manufactured this lawsuit.[8]

2                                    **ARGUMENT**

3    **I.    Plaintiffs Do Not Meet the Standing Requirements of Article III, the TCPA, or the UCL.**

4         "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life*

5    *Ins. Co.*, 511 U.S. 375, 377 (1994).  "The Article III case or controversy requirement

6    limits federal courts' subject matter jurisdiction by requiring that plaintiffs have

7    standing." *Mlejnecky v. Olympus Imaging Am., Inc.*, No. 2:10-CV-02630-JAM-KJN,

8    2011 WL 1497096, at *1 (E.D. Cal. Apr. 19, 2011) (citing *Allen v. Wright*, 468 U.S.

9    737, 750 (1984)).  Federal Rule of Civil Procedure 12(b)(1) provides the vehicle to

10   present a motion to dismiss for lack of subject matter jurisdiction.  *LaCourt v. Specific*

11   *Media, Inc.*, Case No. SACV 10–1256–GW (JCGx), 2011 WL 1661532, at *2 (C.D.

12   Cal. Apr. 28, 2011)  ("A challenge to standing under Article III 'pertain[s] to a federal

13   court's subject-matter jurisdiction' and is therefore 'properly raised in a motion under

14   Federal Rule of Civil Procedure 12(b)(1).'").  The motion may raise the challenge

15   facially, *i.e.*, limited to the complaint's allegations, or factually, *i.e.*, based on extrinsic

16   evidence.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *McKinley v. Southwest*

17   *Airlines*, Case No. CV 15–02939–AB (JPRx), 2015 WL 2431644, at *2 (C.D. Cal.

18   May 19, 2015).  On a factual challenge, the court "need not presume the truthfulness

19   of the plaintiffs' allegations" nor be bound by the four corners of the complaint,

20   *White*, 227 F.3d at 1242, because "[t]he presumption of correctness that we accord to

21   a complaint's allegations falls away on the jurisdictional issue once a defendant

22   proffers evidence that calls the court's jurisdiction into question," *McKinley*, 2015 WL

23   2431644, at *2.

24         District courts are afforded discretion to consider "extrinsic evidence and, if

25

26   _____

     [8] As set forth herein, Plaintiffs fail to allege the circumstances surrounding each of

27   their decisions to initiate a text to Microsoft.  The lack of facts alleging **_why_** Plaintiffs'
     chose to participate in Microsoft text message promotions is another fatal pleading

28   deficiency.

6

DEFENDANT MICROSOFT CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

disputed, weigh the evidence to determine whether the facts support subject matter jurisdiction without converting the motion to dismiss into a motion for summary judgment." *Id.*  The defendant may submit affidavits or any other evidence properly before the court.  *Harrington v. Choicepoint Inc.*, Case No. CV 05–01294 MRP (JWJx), 2006 WL 8198396, at *4 (C.D. Cal Oct. 11, 2006) (citing *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).  Plaintiff in turn bears the burden of establishing that subject matter jurisdiction is proper.  *See id.*; *LaCourt*, 2011 WL 1661532, at *2.  "Standing is a jurisdictional element that must be satisfied prior to class certification."  *Nelsen v. King Cnty.*, 895 F. 2d 1248, 1249-50 (9th Cir. 1990) (internal quotations omitted).  "If the litigant fails to establish standing, he may not 'seek relief on behalf of himself or any other member of the class.'"  *Id.* at 1250 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

The TCPA provides that a "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State" an action for injunctive relief, statutory damages, or both.  TCPA, 47 U.S.C. § 227(c)(5).  In addition to having received a telephone call in violation of the TCPA regulations, a plaintiff asserting claims under the TCPA must meet the standing requirements of Article III.  To satisfy Article III's standing requirements, "a plaintiff must show (1) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000).

If Plaintiffs have not suffered an "injury in fact" cognizable under Article III, they lack standing to sue, and thus the Court lacks subject matter jurisdiction to adjudicate their claims.  *Id.*  Standing under California's UCL is even more

7

demanding than the standing requirements of Article III: Plaintiffs must assert that they have "suffered an injury in fact ***and*** ha[ve] lost money or property" as a result of Microsoft's conduct.  Cal. Bus. & Prof. Code § 17204 (emphasis added); *see also Buckland v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 814 (2007), *disapproved on other grounds in Kwikset v. Superior Court*, 51 Cal. 4th 310, 337 (2011).

A.     Plaintiffs Lack Standing Regarding Any Microsoft Text Messaging Promotion to Which They Did Not Subscribe.

Each Plaintiff claims to have texted a specific keyword to the 29502 short code to participate in a specific Microsoft promotion.  Complaint ¶ 25 (Pietzak texted "GAMER"); *id.* ¶ 32 (Hudson texted "SURPRISE").  Although not alleged in the Complaint, Hudson also texted the keyword "HALO."  *See* Nahrup Decl. ¶ 6.  Plaintiffs' claims, however, are not limited to these two or three Microsoft promotions.  On behalf of themselves and the putative class, Plaintiffs purport to assert claims as to six other Microsoft promotions: "HAPPY,"  "SOCIAL," "PLAY," "WALDEN," "EVENTS," and "MSHS."  Complaint ¶¶ 2, 59, 110.  Because Plaintiffs never allege to have subscribed to these six Microsoft promotions, Plaintiffs have no basis to allege that they were deceived by any of Microsoft's advertising related to these promotions.  Plaintiffs also cannot claim that they suffered any injury related to these six Microsoft promotions because they do not allege that they ever saw the promotions, were induced into texting those six keywords to the short code 29502, or received unsolicited messages after texting in those keywords.  Thus, Plaintiffs lack both constitutional and statutory standing to assert any claims regarding these six Microsoft promotions.

A number of district courts in the Ninth Circuit adopt a bright line rule that, as a matter of law, the named plaintiffs in a putative class action "cannot expand the scope of [their] claims to include . . . advertisements relating to a product that [they] did not rely upon." *Johns v. Bayer Corp.*, Case No. 09CV1935 DMS (JMA), 2010 WL 476688, at *5 (S.D. Cal. Feb. 9, 2010); *see also Fisher v. Monster Beverage Corp.*, ---

F. Supp. 2d ---, 2013 WL 10945131, at *7 n.8 (C.D. Cal. Nov. 12, 2013) (dismissing plaintiff's claims for lack of standing because plaintiff did not rely on any specific representations made by defendant, and the fact that plaintiff was a member of the defendant's "target group" when he purchased defendant's product did not constitute a "concrete" or "actual" injury as required by Article III).  This is because Plaintiffs may not make use of the class action procedure under Federal Rule of Civil Procedure 23 to assert claims they obviously could not pursue were they suing only to assert their own rights.  *See Blum v. Yaretsky*, 457 U.S. 991, 999 (1982) (reversing permanent injunction in favor of class for lack of standing because "a plaintiff who has been subject to injurious conduct of one kind [does not] possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject").

As Plaintiffs' own allegations reveal, each Microsoft promotion is unique such that viewing one advertisement for a promotion is not the same as viewing them all.  Indeed, even the two social media postings allegedly viewed by Plaintiffs are different.  *See* Complaint ¶¶ 25, 68 and *fig.* 8 (Pietzak viewed "Attention gamers, text 'GAMER' to 29502 & be the first to know about game launches, @Xbox events, & special offers."); *id.* ¶¶ 30, 75 and *fig.* 13 (Hudson viewed "Text SURPRISE to 29502 to find out how to win great prizes!").  Plaintiffs cannot expand their own claims to include social media postings or advertisements that they never saw.  Each post or advertisement offered a different product, promotion, or contest in which a person may be interested, and persons will choose to subscribe to these different text messaging promotions for different reasons.

Moreover, Plaintiffs allege that they viewed other Microsoft promotional advertisements on social media only ***after*** they had already texted "GAMER" and "SURPRISE" to the 29502 short code.  *Id.* ¶¶ 28, 34.  In other words, there was nothing in the advertisements or social media postings for the "HAPPY," "SOCIAL," "PLAY," "WALDEN," "EVENTS," and "MSHS" promotions that deceived Plaintiffs

9

DEFENDANT MICROSOFT CORPORATION'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT

or induced them to text the 29502 short code.  Accordingly, Plaintiffs have no basis to assert claims, nor can they allege they suffered any injury in fact, concerning Microsoft promotions to which they did not subscribe.  For this reason, Plaintiffs lack standing as to the additional Microsoft promotion identified in the Complaint other than "GAMER," "SURPRISE," or "HALO."

B.    Plaintiffs Lack Standing Regarding Any Microsoft Text Message They Did Not Receive.

Plaintiffs fail to clearly plead which text messages, if any, they received from Microsoft.  Instead, Plaintiffs' Complaint describes various amorphous text messages purportedly received by one or more of the named Plaintiffs and/or class members. *See* Complaint ¶¶ 87, 93, 94, 95, 96, 98, and 99.  The Nahrup Declaration, filed concurrently in support of HelloWorld's Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Stay the Matter, describes the four specific text messages that Pietzak actually received and the four specific text messages that Hudson actually received.  Nahrup Decl. ¶¶ 4, 8.  The Court can consider these text messages under Federal Rule of Civil Procedure 12(b)(1) as extrinsic evidence demonstrating lack of subject matter jurisdiction and because Plaintiffs' Complaint arguably incorporates them by reference.[9]  As a matter of law, Plaintiffs lack standing as to any other Microsoft text message that they did not receive.  *See Blum*, 457 U.S. at 999; *Johns*, 09CV1935 DMS (JMA), 2010 WL 476688, at *5; *Fisher*, 2013 WL 10945131, at *7

---

[9] *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("We have extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance."); *Stokes v. CitiMortgage, Inc.*, Case No. CV 14–00278 BRO (SHx), 2014 WL 4359193, at * 4 (C.D. Cal. Sept. 3, 2014) (finding that the plaintiff's loan modification agreement was incorporated into the complaint by reference because the complaint made "numerous references" to the agreement and alleged "that Defendants violated its terms"); *Said v. Encore Sr. Living LLC*, Case No. EDCV 11–01033 VAP (SPx), 2012 WL 602210, at * 2 (C.D. Cal. Feb. 24, 2012) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." (citations omitted)).

10

n.8 .  Just as Plaintiffs lack standing to assert claims regarding the six Microsoft promotions identified in the Complaint to which Plaintiffs did not subscribe, Plaintiffs also have no basis to assert claims regarding text messages they did not receive. Plaintiffs cannot have been "embarrassed," emotionally harmed, or otherwise injured by messages that were never sent to their mobile phones.

C.    Plaintiffs Lack Standing as to Their UCL Claims Because They Did Not Suffer Any Lost Money or Property.

Plaintiffs have not alleged that they suffered lost money or property as required for standing under the UCL.  *See* Cal. Bus. & Prof. Code § 17204.  Pietzak claims that the receipt of unwanted text messages from Microsoft caused him "embarrassment and emotional harm," including the unwanted ringing of his cell phone, which also caused him "actual harm and embarrassment in his profession."[10]  Complaint ¶ 26. But alleged embarrassment in the profession, even if it could be considered actual harm, does not constitute the loss of money or property necessary for UCL standing. Moreover, merely stating that he suffered actual harm with no factual allegations to support that conclusion, does not satisfy Pietzak's pleading burden.  Conclusory allegations are insufficient to allege an injury in fact.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a pleading is insufficient if it provides only "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions devoid of 'further factual enhancement'").

Hudson similarly alleges harm in a broad, conclusory manner that is insufficient to establish that she lost money or property.  Hudson alleges "Microsoft's repeated sending of spam text message advertisements to her mobile device has caused Ms. Hudson repeated embarrassment, financial loss, and emotional injury.  In meetings with movie producers and other potential clients, Ms. Hudson's mobile phone rang at

---

[10] Pietzak's allegations regarding his profession, his clients, and the various businesses at which he has worked should be stricken from the Complaint as immaterial, impertinent, and irrelevant to this action.  Fed. R. Civ. P. 12(f).  Pietzak's employment and laundry list of clients have no bearing on the issues in this case, and appear to be intended solely to sensationalize the case for the purpose of garnering media attention.

inappropriate times"[11] causing "embarrassment, lost profits, and actual damages to her reputation."  Complaint ¶ 15.  As noted above, embarrassment, emotional injury, and damage to reputation do not constitute lost money or property and are insufficient to convey standing under the UCL.

In addition to her allegations of harm being vague and conclusory, Hudson's alleged "financial loss" and "lost profits" are nothing more than "conjecture," "speculative," and "hypothetical" --  the exact type of allegations that fail to establish harm for the purposes of standing.  *Friends of the Earth*, 528 U.S. at 180-81 (a plaintiff's injury in fact must be "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical . . .").  Hudson cannot plausibly claim that receipt of an unwanted text message caused her to lose clients and therefore caused financial harm, without alleging the additional, specific facts that support that unlikely conclusion.  Like Pietzak, Hudson also lacks standing to pursue these claims under the UCL.[12]

## II.     Plaintiffs Do Not Meet the Factual Pleading Standard of Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6).

In addition to Plaintiffs' lack of standing to pursue these claims, Plaintiffs also fail to meet their factual pleading burden.  To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[11] As set forth above, two of the four text messages Hudson received were within one minute of her texting the key word to the short code.

[12] Plaintiffs also lack standing if they subscribed to Microsoft text messaging promotions for the purpose of pursuing this litigation.  *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1151 (2013) (Plaintiffs "cannot manufacture standing by merely inflicting harm on themselves . . . ."); *Buckland*, 155 Cal. App. 4th at 815-17 (dismissing plaintiff's UCL and FAL claims where the plaintiff purchased the defendant's product because she suspected defendant's advertising about the product contained false and misleading statements and wished to pursue a false advertising lawsuit against the defendant); *see also Nat'l Family Planning & Reproductive Health v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("We have consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing.  Such harm does not amount to an 'injury' cognizable under Article III.").

"The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). The facts alleged must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A court should disregard those allegations that are merely conclusions. *See id.* (a pleading is insufficient if it provides only "labels and conclusions," or "naked assertions devoid of 'further factual enhancement'"). While a court must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from those allegations, the court is not required to accept as true allegations that are contradicted by documents incorporated into the complaint or properly subject to judicial notice. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Where, as here, Plaintiffs' allegations sound in fraud, they are subject to the heightened pleading standard of Rule 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *see also* Complaint ¶ 4 ("Microsoft solicits phone numbers from potential customers in an unlawful *bait-and-switch marketing scheme*."); *id.* ¶ 137 ("Defendants' violated the *'fraudulent'* prong of the UCL by intentionally and knowingly *misrepresenting* that Plaintiffs and potential customers have full control to prevent the sending of a barrage of SMS messages to their mobile phones.") (emphases added). Rule 9(b) requires Plaintiffs to "set forth *more* than the neutral facts necessary to identify the transaction," and to specifically allege "'the who, what, when, where, and how' of the misconduct charged." *Kearns*, 537 F.3d at 1124 (emphasis in original).

Here, Plaintiffs have failed to satisfy their pleading burden under Rules 8, 9(b), and 12(b)(6). Although Plaintiffs provide the details of the social media postings they allegedly viewed and the specific keywords they allegedly texted to short code 29502, they fail to allege when and under what conditions they viewed the social media

13

postings,  when and under what conditions they sent their respective text messages to the 29502 short code, from what mobile telephone number they sent their respective text messages, when they received unsolicited text messages from Microsoft, the content of those unsolicited text messages, and other basic information that would allow Defendants to ascertain that Plaintiffs were actually recipients of text messages from Microsoft promotional campaigns.

As stated in Section I.B., *supra*, Plaintiffs may point to paragraphs 87 and 93-99 of the Complaint as reflecting the text messages they received from Microsoft, but these paragraphs confusingly state that "[o]ne or more of the Plaintiffs," "Plaintiff(s)," "Plaintiff," and "Plaintiffs," (*see* Complaint ¶¶ 93-99), received various text messages from Microsoft throughout the class period.  The Complaint does not specify which messages each named Plaintiff received, and appears to conflate the named plaintiffs' actual experience with speculation regarding the experience of unnamed putative class members.  Plaintiffs do not even allege the mobile telephone number at which they received these unsolicited messages.  For these reasons, the only "reasonable inference" the Complaint supports is that Plaintiffs were able to research past social media postings from Microsoft—not that they actually received any text messages, unsolicited or otherwise, from Microsoft.

Such incomplete, confusing, and inconsistent pleading fails to meet the basic requirements of Rule 8, *Twombly*, and *Iqbal*, let alone the heightened pleading requirements under Rule 9(b) for allegations that sound in fraud, as Plaintiffs' allegations do.  Plaintiffs' pleading is therefore deficient, and the Complaint should be dismissed.

## III.    Plaintiffs Fail to State a Claim for Relief Under the TCPA.

Even if Plaintiffs could allege specific facts about the Microsoft promotions to which they subscribed and the text messages they received, they still could not state a claim for relief under the TCPA.  The TCPA places restrictions on the use of

14

1  automated telephone equipment to contact a person on their mobile cellular phone, as

2  follows:

> 3  (1) PROHIBITIONS.—It shall be unlawful for any person within the United
> States, or any person outside of the United States if the recipient is within the
> 4  United States—
>
> 5  (A) to make any call (other than a call make for emergency purposes or made
> with the prior express consent of the called party) using any automatic
> 6  telephone dialing system or an artificial prerecorded voice—
>
> 7  *       *       *
>
> 8  (iii) to any telephone number assigned to a paging service, cellular
> telephone service, specialized mobile radio service, or other radio
> 9  common carrier service, or any service for which the called party is
> charged for the call;
>
> 10

11  TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).  Plaintiffs allege that Defendants violated the

12  TCPA because "[i]nstead of obtaining ***express written consent*** prior to sending

13  repeated text message solicitations, Microsoft lures potential customers to provide

14  their mobile phone numbers in response to misleading sweepstakes and discount

15  promotions."  Complaint ¶ 1.  Not only did Microsoft obtain the prior written consent

16  of Plaintiffs, but also Plaintiffs were not "lured" into anything misleading because

17  they requested specific information from Microsoft and received exactly what they

18  requested.

19       Plaintiffs do not allege that Defendants, unprompted, began sending text

20  messages directly to their mobile phones.  Rather, the allegations are clear that it was

21  *Plaintiffs* that initiated the receipt of text messages from Microsoft by voluntarily

22  texting the 29502 short code. In doing so, Plaintiffs not only unequivocally expressed

23  their interest in learning more about Microsoft's "GAMER" and "SURPRISE"

24  promotions, but they also provided their consent to receive that information through

25  text messages.  Plaintiffs cannot now claim that Microsoft violated the TCPA by

26  texting them "unsolicited" messages when Plaintiffs' own allegations demonstrate that

27  they themselves solicited this information from Microsoft.

28       Moreover, and quite noticeably, Plaintiffs do not allege that they received

15

information unrelated to the "GAMER" and "SURPRISE" keywords.  Indeed, Plaintiffs only generally allege that they began receiving "unwanted" and "unsolicited" text messages. *Id.* ¶¶ 26, 32.  They do not allege the specific content of the "unwanted" text messages they received, and nor could they, because Plaintiffs received exactly what they requested.  *See* Nahrup Decl. ¶¶ 3-4, 7-8.  Accordingly, Plaintiffs' TCPA claims fail.

## IV.    Plaintiffs Fail to State a Claim for Relief Under the UCL.

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200 *et seq.*  An "unlawful" business practice is any activity that can be properly deemed a business practice and is also forbidden by law.  *Cel-Tech Commc'ns, Inc. v. L.A. Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  The UCL essentially "borrows violations of other laws," "treats them as unlawful practices," and makes them "independently actionable."  *Id.*  To bring a UCL claim as Plaintiffs do here, Plaintiffs must necessarily demonstrate that Microsoft's conduct was unlawful, unfair, or fraudulent in violation of another law.  *See id.*

Plaintiffs' allegation that Microsoft violated the UCL is premised entirely on Microsoft's alleged violation of the TCPA: "Defendants' nonconsensual violations of the law and misleading statements are unlawful," (Complaint ¶ 135), "Defendants violated the 'fraudulent' prong of the UCL by intentionally and knowingly misrepresenting that Plaintiffs and potential customers have full control to prevent the sending of a barrage of SMS messages to their mobile phones," (*id.* ¶ 137), and "Defendants violated the "unfair" prong of the UCL by leading the public to believe that commercial text messages would not be sent to them without their permission" (*id.* ¶ 138; *see also id.* ¶ 139).  However, as explained above, Plaintiffs fail to state a claim for relief under the TCPA because Microsoft complied with its requirements by obtaining Plaintiffs' consent when they voluntarily requested information from Microsoft, and Microsoft sent Plaintiffs exactly what they requested.  Moreover, Plaintiffs allege that Microsoft represented that they could stop text messages by

16

simply texting "STOP"; yet Plaintiffs never allege that they did that and text messages nonetheless continued. *See* Nahrup Decl. ¶¶ 5, 9. Consequently, there are no factual allegations to support Plaintiffs' claim that Defendants violated the UCL by leading customers to believe they had control to prevent the sending of messages. Having not actually tried to exert that control by texting "STOP," Plaintiffs lack any basis to claim they did not have control over the receipt of text messages. Accordingly, Plaintiffs' UCL claims necessarily fail.

Plaintiffs' UCL claims also fail because they have not pled any unfair, fraudulent, or unlawful conduct by Microsoft. Microsoft's practice of posting information about promotions onto social media websites, inviting customers to voluntarily request information about promotions from Microsoft through the use of text message, and then sending customers the exact information they requested is not unlawful, unfair, or fraudulent. Although Plaintiffs allege in conclusory fashion that Microsoft is engaged in an "unlawful bait-and-switch marketing scheme" to lure customers into providing their mobile phone numbers so Microsoft could message them, (Complaint ¶¶ 3, 4), they do not specify the supposedly deceptive statements on which they relied. Further, it strains credulity for Plaintiffs to allege that they did not expect to receive text messages from Microsoft , (*id.* ¶¶ 25, 28, 30, 34), after voluntarily texting 29502 to specifically request such information.

Out of the numerous pages of figures and examples of messages allegedly sent by Microsoft, Plaintiffs only once reference the text message describing the terms and conditions of the promotion that they received from Defendants after texting to the 29502 short code: "Seconds after receiving the marketing SMS message from Defendants offering 5% off in-store purchases, Defendants sent a second SMS message to Plaintiff stating, 'MICROSOFT STORE: You're signed up to receive alerts and deals. Message and data rates may apply. Up to 10 messages/month. Text STOP to cancel. HELP for help." Complaint ¶ 96; *see also* Nahrup Decl. ¶¶ 4, 8. This language not only informed Plaintiffs that they would receive information from

Defendants (which Plaintiffs already knew from the social media postings), but it also informed Plaintiffs how to stop receiving messages if they so desired.  *See* Complaint ¶ 96; *see also* Nahrup Decl. ¶¶ 4, 8.

This disclosure further demonstrates that Microsoft's text messaging promotions are not unlawful, unfair, or fraudulent because it informed Plaintiffs of the nature of its text messaging program.  If Plaintiffs no longer wanted to receive the information they voluntarily requested from Microsoft, they could have easily stopped the messages before they commenced.  *See* Nahrup Decl. ¶¶ 4-5, 8-9.  That Plaintiffs chose to continue to receive information from Microsoft does not turn Microsoft's text messaging promotions into a nefarious business practice.  Accordingly, Plaintiffs fail to plead any unlawful, unfair, or fraudulent conduct by Defendants, and their UCL claims should be dismissed.

## V.   Plaintiffs' Class Claims Fail Because They Base Them on an Improper "Fail Safe" Class Definition.

A "fail safe" class is one "that precludes membership unless the liability of the defendant is established."  *Kamar v. RadioShack Corp.*, 375 Fed. App'x 734, 736 (9th Cir. 2010).  Courts reject "fail safe" classes because they define the class in a way that "the class members either win or are not in the class . . . [such that] the Court cannot enter an adverse judgment against the class."  *See Genenbacher v. CenturyTel Fiber Co. II, LLC*, 244 F.R.D. 485, 488 (C.D. Ill. 2007); *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011).  In other words, class members would "be 'bound only by a judgment favorable to plaintiffs but not by an adverse judgment.'"  *Heffelfinger v. Elec. Data Sys. Corp.*, Case No. CV 07-00101 MMM (Ex), 2008 WL 8128621, *10 (C.D. Cal. Jan. 7, 2008).  Thus, the Ninth Circuit has rejected fail safe classes as "palpably unfair to the defendant" and "unmanageable," and district courts routinely strike them.  *Kamar*, 375 Fed. App'x at 736; *see also Dodd–Owens v. Kyphon, Inc.*, Case No. C-06-3988 JF (HRL), 2007 WL 420191, *3 (N.D. Cal. Feb. 5, 2007); *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158, 1166-67 (N.D. Cal. 2008).

Here, the Court should strike Plaintiff's class claims and "fail-safe" class definition because the claims and definition improperly condition class membership on a determination of the central liability issue presented in this case.  Plaintiffs define their proposed class as follows:

> All persons in the United States and its Territories **who have not provided prior express written consent** for Defendants to send marketing SMS messages through a Microsoft internet web form, but who received one or more unauthorized marketing SMS messages on behalf of Defendant Microsoft after sending a SMS text message of one or more of the following keywords: "GAMER," "HAPPY," "HALO," "SURPRISE," "SOCIAL," "PLAY," "WALDEN," "EVENTS," or "MSHS" to SMS short code 29502 on or after October 16, 2013.

Complaint ¶ 110 (emphasis added).  This is precisely the type of class definition that the Ninth Circuit has determined is "unfair" and "unmanageable."  For an individual to be included in the class, Defendants must have first done something "unauthorized," *i.e.*, sending a text message to that individual without his or her prior express written consent.  This requires determining that (1) Defendants sent a text message to that individual, (2) the individual did not provide prior express written consent, and (3) that the text message was therefore unauthorized, all **_before_** the individual can be included in Plaintiffs' class definition.  If that liability is not established, then that individual will not be bound by any adverse judgment against the class because he or she would not meet the class definition.  This "palpably unfair" definition is intended to circumvent the individual issues related to consent that would predominate had Plaintiffs used a definition that included anyone who received a text message from Microsoft.  Such a class definition is impermissible.  Therefore, Plaintiffs' class claims and class definition should be stricken.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Microsoft's Motion to Dismiss should be granted and Plaintiffs' Complaint should be dismissed in its entirety.

Dated:  September 23, 2015

SIDLEY AUSTIN LLP


By:  /s/ Amy P. Lally
Amy P. Lally
Attorneys for Defendant
Microsoft Corporation

210177442v.2